**City of Philadelphia v. City Firefighters' Assn.**

*Robert F. Stewart,* for plaintiff.
*Howard J. Casper,* for defendant.

GUARINO, *J.,* February 21, 1980—On August 13, 1979, the City of Philadelphia, a municipal corporation and political subdivision of Pennsylvania, filed a complaint in equity for injunctive relief

against the defendants: the City Firefighters' Association of Philadelphia, Local No. 22 (C.F.A. Union), a labor organization of firemen employees of the City, the American Arbitration Association, (AAA), a non-profit organization, and professor J. Joseph Loewenberg, a professional impartial arbitrator.

The principal parties to this suit are the city and C.F.A. Union. The other defendants have filed neither pleadings nor memorandums of law.

In accordance with provisions of the Act 111, 43 P.S. §217.1 et seq. the principal parties submitted their collective bargaining dispute for the fiscal year ending June 30, 1979 to binding arbitration. Each party selected one arbitrator; a third was agreed upon by both. The city's representative was H. Thomas Felix, II; C.F.A. Union appointed John A. Reilly; the impartial member was S. Harry Gelfand. On July 15, 1978, this board made an award governing the collective bargaining arrangements during the 1978-1979 fiscal year, beginning with July 1, 1978 and ending June 30, 1979. The city's arbitrator filed a dissent, specifically objecting to paragraph 13 of that award. That paragraph reads:

The provisions of Philadelphia Fire Department Directive 24, issued in June, 1973, shall be and remain the procedure which both parties shall follow in the presentation, hearing and disposition of grievances. If a grievance is not settled at Step C therein, the member may, through the Union, invoke the provisions of Act No. 111 which provides that ". . . firemen . . . shall, through labor organizations . . . have the right to an adjustment or settlement of their grievances . . . in accordance with this act"[1]

---

1. The language in quotation is found in the Act, see 43 P.S. §217.1.

and request the appointment of a board of arbitrators as provided in said act.-

The city's arbitrator's dissent to this provision reads:

I dissent from this provision because the majority of the panel has incorrectly read the law. Act 111 does not provide binding arbitration for grievances. A careful reading of the act clearly shows that its intent and purpose was for interest arbitration only and thus, I consider this award null and void without any legal effect whatsoever.

Aside from dissent, no formal objection was made by the city. The city did, however, inform the Union that paragraph 13, calling for arbitration of grievances, was unlawful, that it would not be bound by it, and that it would contest any effort to enforce that provision.

The Philadelphia Fire Department has an intradepartmental grievance procedure which was adopted in January of 1973 known as Directive 24.[2]

---

2. Directive 24 — Subject: Department Grievance Procedure

1. Policy — To specify the procedure to be followed in initiating grievances within the Department.

II. Procedure —

A. Individual grievances at the company level will initially be discussed with the company officer involved. If the issue is not resolved, the complainant may choose a member of his company or the company steward in further discussing his problem with the company officer involved and the company captain.

B. If the grievance is not settled at the company level, the member aggrieved may request in writing on forms provided by the Department, that a Battalion Chief and/or the Deputy Chief review the case. A copy of this written request will be forwarded through channels to the Personnel Officer. At the time the Battalion Chief and/or the Deputy Chief reviews the case the aggrieved member may be represented by a member of Local 22 Executive Committee. The Battalion Chief and/or

On May 13, 1979, in compliance with this directive, Captain Joseph Braim, a firefighter, employee of the Fire Department of the City of Philadelphia and member of the C.F.A. Union, filed a grievance alleging he was transferred without cause. In accordance with the prescribed procedure, on May 3, 1979, the grievant demanded review by the Fire Commissioner. On May 30, 1979, the grievance was reviewed and rejected. No appeal was taken pursuant to the Administrative Agency Law. See 42 Pa. C.S. §933(a)(2).

Not satisfied with the departmental decision, on June 7, 1979, C.F.A. Union submitted to the American Arbitration Association its demand for arbitration, notifying the city and naming its representative arbitrator, as provided for in paragraph 13 of the Arbitration Award of July 15, 1978. Then, on June 26, 1979, C.F.A. Union requested the American Arbitration Association to incept arbitration procedure,

the Deputy Chief will decide the issue as expeditiously as possible and forward a copy of the proposed settlement to the Personnel Officer as well as to the aggrieved member.

C. If the grievance is still not settled the member may request that the Personnel Officer submit the grievance to the Fire Commissioner for formal review and action. At this stage of the procedure, the member may be represented at the hearing before the Commissioner by two members of Local 22 Executive Committee.

D. Group grievances involving a platoon(s) or company(ies) will follow the same procedure as for individual grievances.

E. If any situation develops where the member(s) continue to feel aggrieved after the action of the Commissioner, they may present their case, in writing to the Managing Director for further review.

F. No one will be discriminated against for availing himself of his rights under the above procedure.

G. All questions relative to the procedures above should be submitted to the Personnel Officer of the Fire Department.

appoint an impartial arbitrator and schedule a hearing in the Braim grievance. In compliance, on July 3, 1979, the American Arbitration Association appointed professor J. Joseph Loewenberg[3] as impartial arbiter and scheduled a hearing for August 22, 1979.[4] By letter of August 8, 1979, the city registered its objection to jurisdiction and to right of the C.F.A. Union to invoke binding arbitration for the grievance, requesting that the American Arbitration Association terminate its efforts. For its part, defendant C.F.A. Union asserts the right to binding arbitration based on paragraph 13 of the July 15, 1978 award. The city urges injunctive relief to prevent defendants from proceeding to arbitration of Captain Braim's grievance on the ground that the grievance is not subject to binding arbitration under Act 111, and that paragraph 13 to which its arbitrator dissented is illegal and inoperative.

Our question is twofold: first, is paragraph 13 of the Award repugnant to and violative of Act 111? Second, does an injunction lie to prevent arbitration of the grievance authorized by paragraph 13, if that provision offends Act 111?

Collective bargaining by firemen through their labor organization is governed by the Act of June 24, 1968, P.L. 237 No. 111, 43 P.S. §217.1 et seq. known as Act 111. The act encourages the firemen and their public employer to exert every reasonable effort to settle disputes by collective bargaining and for compulsory and binding arbitration in the event of a collective bargaining impasse. 43 P.S. §217.4. Worrilow v. Lebanon Lodge Fraternal Order of Police, No. 42, 2 Pa. Commw. 56, 288 A.2d 835 (1972). Under section 4(a), a tripanel board of arbi-

---

3. One of the defendants herein.

4. Exhibit B.

trators is appointed in a case of dispute whenever the parties reach an impasse. 43 P.S. §217.4(a). In such an event, the Board of Arbitrators will determine the collective bargaining impasse which will govern the relationship between the parties. PLRB v. Schultz, 9 PPER §9109, at 229 (1978). The right to bargain collectively and to binding arbitration of collective bargaining disputes is specifically limited to the terms and conditions of employment. Sec. 217.1, specifically provides that:

". . . such policemen or firemen, have the right to *bargain collectively* with their public employers *concerning the terms and conditions of their employment, including compensation, hours, working conditions, retirement, pensions and other benefits,* . . . (Emphasis supplied.)

It is a maxim of statutory construction that where the general terms follow enumerated terms which have a specific meaning, the general terms are interpreted to mean things of the same kind. Commonwealth v. Simmons, 211 Pa. Super. 344, 236 A.2d 563 (1967); Pension Fund of the City of Pittsburgh Appeal, 239 Pa. Super. 111, 326 A. 2d 1011 (1976); See also, 1 Pa. C.S. §1903. Only collective bargaining problems which are encompassed within the context of terms and conditions of employment are valid. See Flood v. Borough of Canonsburg, 28 Pa. Commw. 248, 368 A.2d 348 (1977). In Flood, the court stated at 250-251:

Act 111 does not require or even provide for arbitration of grievances arising under collective bargaining agreements. Its provision for arbitration applies only to the process of collective bargaining and furnishes an exclusive remedy only for impasses arising during that process. Id. 28 Pa. Commw. 250-251.

A bargaining agreement or an arbitration award provision which is not within the mandate of the statute is void and unenforceable. See Fraternal Order of Police, E.B. Jermyn Lodge No. 2 v. City of Scranton, 26 Pa. Commw. 513, 364 A.2d 753 (1976); Allegheny County Firefighters, Local 1038 International Association of Firefighters v. Allegheny County, 7 Pa. Commw. 81, 88-89, 299 A.2d 60 (1973); Washington Arbitration Case, 436 Pa. 168, 259 A.2d 437 (1969). Arbitration officers must adhere to the mandate of the enacting legislature; in this case, Act 111. Harney v. Russo, 435 Pa. 183, 255 A.2d 569 (1969); Pennsylvania Constitution, Art. III, Sec. 31. All agreements or provisions of arbitration awards that would require the municipality to take action specifically or impliedly violative to law are not matters suitable for collective bargaining or binding arbitration. Washington Arbitration Case, supra; Cheltenham Township v. Cheltenham Twp. Police Dept., 11 Pa. Commw. 348, 312 A.2d 835 (1974).

The transfer of policemen and firemen within their respective departments is an administrative matter which of necessity must be left to the discretion and direction of departmental heads who are responsible for the efficient operation of these departments. As such, it cannot be left to a panel of arbitrators. To do so would put arbitration panels in the business of running these departments. Whether a policeman or a firefighter should be transferred is not something that depends on the equities between the policeman or fireman and his employer. Transfer of policemen and firemen should and must of necessity be subject to the exigencies and requirements as they may from time to time arise. Transfers of these forces should and must be left to those who are responsible for conducting the daily

operations of these departments. It should not be left to an agency whose concern is the equities between the employer and employee, and who has no understanding or responsibility for conducting these operations. If the public interest is to be served, and these departments are concerned with the public interest, then the departmental head should have the exclusive power to direct these forces where and when they are needed, and without interference from an agency who has no responsibility or the pressures and who does not have to account for inefficient operations of these departments. The power should be where the responsibility is. Accordingly, we do not deem the subject of transferring Captain Braim to be a matter for compulsory and binding arbitration.

The majority which resolved the original impasses between the City and C.F.A. Union exceeded the scope of its power in providing for arbitration of grievances; paragraph 13 is inoperative. The Pennsylvania Constitution, Art. III, Sec. 31, provides that arbitration panels selected for adjustment or settlement of collective bargaining disputes between policemen and firemen and their public employer can make binding decisions only when acting "in accordance with law". "In accordance with law" means that the arbitrators adhere to the mandates of the enabling act. Harney v. Russo, supra. Thus, it is of no importance or consequence that the City made no formal objection to the arbitration Award; paragraph 13 of the award does not adhere to the enabling Act, and is, ipso facto, null and void and not binding. See Fraternal Order of Police, E.B. Jermyn Lodge, No. 2 v. City of Scranton, supra; Flood v. Borough of Canonsburg, supra, citing Allegheny County Firefighters, Local 1038, International Association of Firefighters v. Allegheny

County, supra. It is of no consequence that the City did not appeal from the Arbitration Award. Subsection 217.7 of Act 111, 43 P.S. §217.7 specifically states that no appeal is permitted from the determination of the majority of the Board of Arbitrators. Where the statute specifically provides that no appeal may be taken from an Arbitration Award, injunctive relief is an appropriate means of testing the legality and constitutionality of the award.

Before the Amendment in 1967, Art. III, Sec. 31 of the Pennsylvania Constitution provided that:

"The General Assembly shall not delegate to any special commission, any power to make, supervise or interfere with any municipal improvement, money, property or effects, whether held in trust or otherwise, or to levy taxes or perform any municipal function whatever."

In Erie Firefighters, Local No. 293 v. Gardner, 406 Pa. 395, 178 A.2d 691 (1962), the Supreme Court held by affirming the opinion of Judge Laub, 26 D.&C. 2d 327 (1961), that binding arbitration on public employers would violate this provision of the Constitution. In response to this decision, Art. III, Sec. 31 was amended by addition of the following sentence:

Notwithstanding the foregoing limitation or any other provision of the Constitution, the General Assembly may enact laws which provide that the findings of panels or commissions, selected and acting in accordance with law for the adjustment or settlement of grievances or disputes or for collective bargaining between policemen and firemen and their public employers shall be binding upon all parties and shall constitute a mandate to the head of the political subdivision which is the employer, or to the appropriate officer of the Commonwealth if the Commonwealth is the employer, with respect to

matters which can be remedied by administrative action, and to the lawmaking body of such political subdivision or of the Commonwealth, with respect to matters which require legislative action, to take the action neccessary to carry out such findings. See Harney v. Russo, supra, 435 Pa. at 187.

A serious constitutional question would arise if the Court were to permit the first Arbitration Panel by its award to dictate to a second panel the right to arbitrate a dispute. Delegatus non potest delegare; Delegata potestas non potest delegari. A grievance procedure like paragraph 13 of the original arbitration Award which provides for future and ultimate binding arbitration of disputes constitutes a second delegation of authority to a non-governmental body by a first non-governmental body whose authority to perform a governmental act is recognized as an exception to more delegation by Art. III, Sec. 31 of the Pennsylvania Constitution. See Allegheny County Firefighters, Local 1038, International Association of Firefighters v. Allegheny County, supra, 299 A.2d at 63.

Defendant argues that the intervention of equity is improper; that the issue of whether the Braim grievance is arbitrable should be presented to arbitration, and that equity should not take jurisdiction merely because the arbitrators may fashion an invalid order.

To be sure, equity will not enjoin arbitration in an agreement for binding arbitration based on a disagreement as to whether the issue in dispute is arbitrable or because the arbitrators might fashion an invalid award. See Harleysville Mutual Casuality Co. v. Adair, 421 Pa. 141, 218 A.2d 791 (1966). See Appeal of Jones, 30 Pa. Commw. 549, 552, 375 A.2d 1341, 1342 (1977); see also, Lincoln Sys. of Ed. v. Lincoln Ass'n. of Univ. Profs., 467 Pa. 112, 119, 354

A.2d 576, 580 (1976). Whether the matter comes within the terms of the arbitration agreement—whether it is "arbitrable"—will have to be decided by the arbitrators. It cannot be anticipated that the arbitrators would purposefully fashion an invalid award. Such award would be fraudulent and reviewable.

However, injunctive relief is not grounded on the fear that the arbitrators might fashion an invalid award on a contract to arbitrate or even under compulsory arbitration established by the Compulsory Arbitration Act, 5 P.S. § 167 et seq. Here, there is no arbitration contract authorizing or compelling arbitration. The question is more fundamental: there is no authority for arbitrating Braim's grievance dispute in the law. The July 15, 1978 Arbitration Award is invalid. Where an Arbitration Panel has exceeded its authority and made an award which clearly contravenes the enabling Act and is clearly violative of the Constitution, and there is no other remedy of preventing its implementation, equity may enjoin it. See Meyers v. Newtown Twp. School Distrct, 396 Pa. 542, 153 A.2d 494 (1959); Leveto v. National Fuel Gas Distribution Corp., 243 Pa. Super. 510, 366 A.2d 270 (1976). See also, Local 736 International Ass'n. of Firefighters v. Firemen's Civil Service Commission, 442 Pa. 398, 276 A.2d 507 (1971); Mazeika v. American Oil Co., 383 Pa. 191, 118 A.2d 102 (1955); Bruhin v. Commonwealth, 14 Pa. Commw. 300, 320 A.2d 907 (1974); Rankin v. Chester-Upland School District, 11 Pa. Commw. 232, 312 A.2d 605 (1973). An injunction will issue when the right is clear and free of doubt and the resulting injury irreparable and eminent. Locust Club v. Hotel & Club Employees' Union, Local 568, AFL-CIO, 397 Pa. 357, 155 A.2d 27 (1959); School District of the City of Pittsburgh v. Zebra, 15

Pa. Commw. 203, 325 A.2d 330 (1974); William v. Bridy, 391 Pa. 1, 136 A.2d 832 (1957). When the conduct sought to be enjoined is unlawful, the act itself constitutes irreparable injury. See Commonwealth v. Gibney, 21 D.&C. 2d 5 (1960).

Defendants' contentions that grievances of the nature here involved are generally matters that are considered in collective bargaining has no merit as applied to this case or any case where the right to collective bargaining and binding arbitration is limited by Act 111, 43 P.S. §217.1 et seq. While the use of grievance procedure in collective bargaining contracts between employer and employee has a salutory effect in providing peaceful labor relations in the private sector, in the context of the public sector, because public employers and employees are in many respects more limited in what they may and may not do, the concern for peaceful labor relations is not as great. See Allegheny County Firefighters, Local 1038, International Association of Firefighters v. Allegheny County, supra.

## ORDER

And now, this February 21, 1980, after a hearing on the above matter, Paragraph 13 of the Arbitration Award, date July 15, 1978, is declared to be null and void, and of no effect. Defendants, City Firefighters' Association of Philadelphia, Local No. 22 and American Arbitration Association and Professor J. Joseph Loewenberg are enjoined and restrained from proceeding to binding arbitration pursuant to its terms or from otherwise implementing its terms. Let injunction issue sec leg.

## SUPPLEMENTAL OPINION

GUARINO, J., April 28, 1980—On February 21, 1980, this court enjoined defendants from imple-

menting a binding Arbitration Award made pursuant to Act 111, 43 P.S. §217. The court held that (1) Paragraph 13 of the Arbitration Award, entered over the dissent of the City Arbitrator, was contrary to state law and inoperative; a collective bargaining Arbitration Award cannot mandate that the City carry out an act violative of the law; (2) since the Act does provide an appeal procedure, the City was not barred from challenging the award when defendants sought to implement the invalid provision; a complaint in equity for mandatory injunctive relief was a proper and timely method for challenging the award.

We have been requested to review that Order in the light of Grottenthaler v. Pennsylvania State Police, Supreme Court of Pennsylvania, Western District, No. 33, March term, 1979. Our reading of Grottenthaler does not persuade us that we should alter our decision. Grottenthaler unequivocally supports the conclusion that an Arbitration Award under Act 111 cannot mandate a government employer (City) to do an act which is unlawful. Before determining the controlling issue, the Grottenthaler Court carefully pointed out that if the claim depended on an Award which was in violation of 71 Pa.C.S. §5955, the claimant could not prevail. Washington Arbitration Case, 436 Pa. 168, 259 A.2d 437 (1969).

The issue on which the Grottenthaler decision turned is not present in the case at bar. Thus, the Grottenthaler holding in not opposite. In that case, the issue that decided the case was whether the state employer was estopped from setting up the defense of illegality of an award which it had negotiated in two successive collective bargaining agreements, and which provision had been funded by the legislature and acted upon by the State employer.

The pivotal issue arises from the following facts.

On December 27, 1973, with the Commonwealth Arbitrator dissenting, the Arbitrators entered an Award granting non-service-connected disability benefits to state troopers for the year commencing July 1, 1974. Before the effective date of the award, however, the legislature removed as collective bargainable items matters relating to pension rights. See 71 Pa.C.S. §5955. Nevertheless, in the ensuing collective bargaining agreements negotiated between the state and the state troopers for the years 1975-1976 and 1976-1977, the pension rights provisions of the award were made a part of these collective bargaining agreements. For the year 1976-1977, the legislature appropriated funding for the benefits. The Commissioner of the State Police, relying on an opinion of the attorney general, of June, 1977, authorized withholding pursuant to the agreement.

Citing Pittsburgh Joint Collective Bargaining Committee v. City of Pittsburgh, 481 Pa. 66, 391 A.2d 1318 (1978), the court in Grottenthaler held that "[t]o permit the Commonwealth to ignore its mandate with impunity in two successive bargaining contracts following the promulgation of Section 5955, and then to assert it as a bar to a claim for recovery under the bargaining agreement would be manifestly unfair."

The facts in the instant case do not present the issue that decided Grottenthaler. The City employer did not acquiesce in the illegal award. It dissented and served notice that it would not be bound. Indeed, we do not believe that the city could have validated the illegal provisions by acquiescence. Unlike the State, the city cannot legislate so as to alter the state law governing its relationship with "government employees". In Grottenthaler, both the execu-

tive and the legislative arms of the government sanctioned the collective bargaining agreements giving pension benefits to the troopers. The Commissioner, with the advice of the attorney general, withheld funds from the employees' payroll, and the legislature funded the benefits. Since the city does not have the same powers as the State, we venture to opine that had the city been the employer in Grottenthaler rather than the state, the result would have been different even on the issue of estoppel.

Accordingly, we find no reason in Grottenthaler that would disturb our original decision.