554 A.2d 166

Borough of Philipsburg, Appellant *v.* Leonard E. Bloom et al., Appellees.

Argued April 21, 1988, before Judges DOYLE, BARRY and MCGINLEY, sitting as a panel of three.

*John W. Burge*, with him, *Michael Brungo*, for appellant.

*Edward S. Blanarik, Jr., James L. Jubelirer & Associates,* for appellees.

OPINION BY JUDGE MCGINLEY, February 6, 1989:

This is an appeal from the order of the Court of Common Pleas of Centre County (trial court), granting the preliminary objections of Leonard E. Bloom, William H. Loose, and William M. Vogle (Appellees) to the New Matter and Counterclaim of the Borough of Philipsburg (Borough). We reverse in part and we affirm in part.

The Appellees were employed as police officers by the Borough. They had been working under the terms of a collective bargaining agreement. At the time the collective bargaining agreement expired, no new collective bargaining agreement had been reached. While negotiations continued, the police worked without a contract. During this period of time, the Appellees were furloughed, and their positions subsequently were eliminated.

On July 1, 1986, the Appellees brought an action alleging that the Borough discharged them in bad faith (because the Borough ended the fiscal year with a surplus) in violation of section 1190 of The Borough Code,[1] 53 P.S. §46190; that the furlough constituted a breach of contract; and that the Borough intentionally interfered with the police department's prospective contractual relations. On August 13, 1986, the Borough filed preliminary objections to the complaint in the nature of a demurrer. One of the demurrers alleged that a cause of action would not lie, because the Appellees' only recourse would be to follow the grievance procedures as set forth in their collective bargaining agreement. On December 12, 1986, the trial court dismissed this preliminary objection, although it granted the demurrer to the counts

---

[1] Act of February 1, 1966, P.L. (1965) 1656, *as amended.*

alleging intentional interference with contractual relations.

On January 6, 1987, the Borough filed an Answer with New Matter and Counterclaim. The New Matter alleged that the grievance procedure was the sole and exclusive remedy available to the Appellees, based on the collective bargaining agreement and pursuant to what is popularly known as Act 111, 43 P.S. §§217.1-217.10.[2] The Counterclaim charged that the Appellees had committed an abuse of process by filing their action, because they allegedly did so merely as a means to coerce the Borough to rehire them. On January 26, 1987, the Appellees filed preliminary objections in the nature of a demurrer to both the New Matter and the Counterclaim. On March 31, 1987, the trial court entered an Opinion and Order granting the demurrer to New Matter, holding that the existence of grievance procedures under the expired contract was irrelevant because the Appellees were not seeking recovery under the expired contract but that instead they were requesting damages for breach of an implied contract and wrongful discharge. The trial court also granted the demurrer to the Counterclaim, based on the Borough's failure to allege any facts which would constitute a willful, improper act on the part of the Appellees which would further their alleged ulterior purpose. The Borough filed a Notice of Appeal from that decision on April 22, 1987.

The Borough alleges that the trial court erred when it granted the demurrer to its New Matter. In support of this allegation the Borough contends that the grievance procedure constituted the Appellees' sole remedy, pursuant to the collective bargaining agreement, even though it had expired, and pursuant to Act 111. The Borough also alleges that the granting of the demurrer to

_____

[2] The Act of June 24, 1968, P.L. 237.

its Counterclaim was in error because the Counterclaim sufficiently set forth a cause of action for the tort of abuse of process. The Borough further alleges that the Counterclaim set forth a sufficient basis for punitive or exemplary damages.[3]

In an appeal from an order sustaining preliminary objections in the nature of a demurrer, we are constrained to examine only the well-pleaded facts of the complaint; a demurrer admits those facts and any inferences reasonably deducible therefrom. *Easton Area Joint Sewer Authority v. Bushkill-Lower Lehigh Joint Sewer Authority*, 71 Pa. Commonwealth Ct. 553, 455 A.2d 286 (1983).

The Borough argues that, pursuant to Act 111, grievance procedures are the sole and exclusive method for resolving disputes in all matters in which police claim that a contractual right has been violated. The Borough further contends that the mandatory grievance and arbitration provisions of the collective bargaining agreement control this dispute and that the grievance and arbitration provisions survived the expiration of the agreement.

The Borough's interpretation of Act 111 is incorrect. Although "Act 111 does not expressly exclude the adjust-

---

[3] The Borough also alleges that the trial court's dismissal of the Borough's preliminary objection to the Appellees' Complaint, in which the Borough contended that the "mere existence of a budget surplus did not constitute bad faith" was in error. The trial court dismissed this preliminary objection in its December 12, 1986, Order and Opinion. The Borough filed an appeal only from the trial court's March 31, 1987, order and opinion. Consequently, the propriety of the trial court's dismissal of the Borough's demurrer is not properly before this Court. Appellees maintain this issue is preserved for review, stating in their Counterstatement of the Case that the Borough took its appeal from both the December 12, 1986, and March 31, 1987, orders. Unfortunately for the Borough, the record indicates that no appeal was taken from the December order. Furthermore, an appeal from the dismissal of a demurrer would be not be proper because such an order is interlocutory.

ment of grievances and disputes as a subject for binding arbitration" (*Township of Moon v. Police Officers of Township of Moon,* 508 Pa. 495, 507, 498 A.2d 1305, 1311 (1985)), in *Flood v. Borough of Canonsburg,* 28 Pa. Commonwealth Ct. 248, 250, 368 A.2d 348, 349 (1977) we held that:

> Act 111 does not require or even provide for arbitration of grievances arising under collective bargaining agreements. Its provision for arbitration applies only to the process of collective bargaining and furnishes an exclusive remedy only for impasses arising during that process. On the other hand, it is well established that the Court of Common Pleas has jurisdiction over actions involving claims under collective bargaining agreements.

We do agree, however, with the Borough's second theory that arbitration of this dispute is required under the terms of the collective bargaining agreement. It is undisputed that the collective bargaining agreement which the Appellees' union and the Borough signed contained a grievance/arbitration provision. Although the collective bargaining agreement had expired, the termination of the agreement did not extinguish the Borough's duty to arbitrate grievances arising under that contract. In *Nolde Brothers, Inc. v. Local No. 258, Bakery & Confectionery Workers Union, AFL-CIO,* 430 U.S. 243 (1977), the Supreme Court of the United States addressed a similar issue. In that case, four days after the collective bargaining agreement had terminated, the employer ceased operations. The employer rejected the union's demand for severance pay, and the employer also refused to arbitrate the dispute. Noting that the dispute arose under the collective bargaining contract, the Court held that the termination of that contract did not termi-

nate the parties' obligation to resolve disputes through arbitration. The Court stated that:

> The parties agreed to resolve *all* disputes by resort to the mandatory grievance-arbitration machinery established by their collective-bargaining agreement. The severance-pay dispute, as we have noted, would have been subject to resolution under those procedures had it arisen during the contract's term. However, even though the parties could have so provided, there is nothing in the arbitration clause that expressly excludes from its operation a dispute which arises under the contract, but which is based on events that occur after its termination. The contract's silence, of course, does not establish the parties' intent to resolve post-termination grievances by arbitration. But in the absence of some contrary indication, there are strong reasons to conclude that the parties did not intend their arbitration duties to terminate automatically with the contract.
>
> . . . .
>
> . . . Consequently, the parties' failure to exclude from arbitrability contract disputes arising after termination, far from manifesting an intent to have arbitration obligations cease with the agreement, affords a basis for concluding that they intended to arbitrate all grievances arising out of the contractual relationship. In short, where the dispute is over a provision of the expired agreement, the presumptions favoring arbitrability must be negated expressly or by clear implication.

*Id.* at 252-53, 255 (emphasis in original).

The collective bargaining agreement which the Borough and the Appellees' union signed nowhere expresses the intent to have arbitration obligations cease with the

agreement. Application of the holding in *Nolde Brothers* leads to the conclusion that any disputes which were arbitrable under the agreement must be arbitrated, even if the dispute arose after the collective bargaining agreement terminated. The Appellees do not claim that a dispute over furloughs was a non-arbitrable issue under the terms of the collective bargaining agreement. Instead, they contend that the dispute does not arise under the contract because their complaint alleges violations of an implied contract, as opposed to violations of the collective bargaining agreement. In *Nolde Brothers* the dispute arose after the termination of the collective bargaining agreement, yet the Court held that the dispute arose under that agreement. We find no basis for distinguishing the facts in that case from the facts in the case now before us. Furthermore, the wording of their complaint does not support Appellees' contention that the action alleges a breach of an implied contract. To the contrary, the complaint alleges a breach of the collective bargaining agreement.[4] Consequently, the Borough correctly asserted in its New Matter that the contract re-

---

[4] The Complaint contains the following paragraphs:

6. The employment of Plaintiffs by Defendant was pursuant to a collective bargaining agreement by and between Defendant and the American Federation of State, County and Municipal Employees (AFSCME), Counsel 83, representing Plaintiffs, for the calendar years 1982 and 1983. A copy of said Agreement is attached hereto at Exhibit 'A' and incorporated herein by reference as though set forth in full.

7. No similar agreement had been reached for calendar year 1984 at such times specified more fully hereinafter.

. . . .

24. Defendant failed to honor the terms and conditions of the Agreement between Defendant and BLOOM . . .

25. BLOOM, had fulfilled all the terms and conditions of the Agreement between Defendant and Plaintiffs.

Similar statements were alleged with respect to the other Appellees.

quired this dispute to be arbitrated and the trial court erred when it granted the demurrer to the New Matter.

We proceed now to the Borough's allegations that its Counterclaim sufficiently stated a cause of action for abuse of process, and that it provided a sufficient basis for punitive or exemplary damages. The Appellees demurred to the Counterclaim alleging that the Counterclaim failed to state a cause of action in that the facts failed to establish an arrest or seizure of the Borough's property. The trial court sustained the demurrer on a different theory, holding that the Counterclaim failed to allege a "willful, improper act in the use of the process not proper in the regular conduct of the proceeding."[5]

The Borough correctly asserts that an arrest or seizure is not an element of the tort of abuse of process. The Supreme Court in *McGee v. Feege,* 517 Pa. 247, 535 A.2d 1020 (1987) recently published a definitive treatment of the tort of abuse of process as differentiated from the tort of misuse of process. The Court held that seizure or deprivation of property is not an indispensable element of the tort of abuse of process, although the Court noted that such a taking is an element of the tort of misuse of process. *Id.* at 259, 535 A.2d at 1026.

The *McGee* opinion invalidates, however, the Borough's second contention that it need not allege any facts other than the "mere issuance of process for an unlawful purpose" in order to maintain a cause of action for abuse of process. The Court stated that "malicious use of civil process has to do with the wrongful initiation of such process, while abuse of civil process is concerned with a perversion of a process after it is issued." *Id.* at 253, 535 A.2d at 1023. Thus, the Borough's Counterclaim for

---

[5] Trial court's opinion, dated March 31, 1987, at 3.

abuse of process was fatally flawed.[6] Having determined that the trial court correctly granted the demurrer to the Borough's Counterclaim, we need not address the sufficiency of its claim for punitive damages.

Based on the foregoing, we reverse the trial court's order granting the demurrer to the New Matter, and we affirm the trial court's order granting the demurrer to the Counterclaim. We remand this matter to the trial court for proceedings consistent with this opinion.

Jurisdiction is relinquished.

### ORDER

AND NOW, this 6th day of February, 1989, the Order of the Court of Common Pleas of Centre County entered March 31, 1987, at No. 86-1593 is reversed insofar as it granted a demurrer to the New Matter, and is affirmed insofar as it granted a demurrer to the counterclaim. This matter is remanded for proceedings consistent with this opinion. Jurisdiction is relinquished.

Judge MACPHAIL did not participate in the decision in this case.

---

[6] Furthermore, even if the trial court had been inclined to consider the Counterclaim as a claim for misuse of process, such a claim would also fail to state a cause of action because it did not allege a seizure of property and because the prior action on which it was based had not yet terminated. To allege a cause of action for misuse of process, the prior action must have been unsuccessful. *Id.* at 254, n.7, 535 A.2d at 1023, n.7.

---

### CONCURRING AND DISSENTING OPINION BY JUDGE DOYLE:

I agree with the majority opinion insofar as it resolves the counterclaim pertaining to abuse of process. I respectfully dissent, however, from that portion of the opinion which would reverse the trial court on the issue of the exclusiveness of the arbitration remedy. In this

matter I would affirm the trial court's order to grant the police officers' demurrer.

The police officers contend that they have stated a cause of action under Section 1190 of the Borough Code (Code),[1] 53 P.S. §46190, by pleading that the Borough improperly furloughed them despite ending its fiscal year with a budgetary surplus. Succinctly stated, in my view, their furlough was not an issue, nor did it give rise to a grievance, under the collective bargaining contract, after that agreement expired.[2] *Nolde Brothers, Inc. v. Local No. 258, Bakery & Confectionery Workers Union, AFL-CIO*, 430 U.S. 243 (1977), upon which the majority relies, is clearly distinguishable. There the subject matter of the dispute was the right of the employees to severance pay upon the employer's cessation of business or upon a plant closing and was specifically covered by a provision in the collective bargaining agreement.[3] The dispute in *Nolde*, therefore, *did* arise under the collective bargaining contract and was a condition of employment during its term. It was a benefit the employees earned by their labor under the terms of the contract itself. This is not the situation in the case now presented to us. The collective bargaining agreement in the present case nowhere addresses the issue of, nor deals with the proce-

---

[1] Act of February 1, 1966, P.L (1965) 1656, *as amended*.

[2] The parties to the agreement were the Borough of Philipsburg and the American Federation of State, County and Municipal Employees, District Council 83 (AFSCME).

[3] Article IX, section 5 of that agreement, provided in pertinent part:

> Section 5. Each full-time employee who is permanently displaced from his employment with the Company by reason of ... the closing of an entire plant, ... shall be compensated for such displacement providing he has been actively employed by the Company for a period of at least three (3) years.

dure for, determining a reduction of the police force for economic or other reasons.

Section 1190 of the Code pertinently provides:

If for reasons of economy or other reasons it shall be deemed necessary by any borough to reduce the number of paid employes of the police or fire force, then such borough shall apply the following procedure: (i) if there are any employes eligible for retirement under the terms of any retirement or pension law, if the party to be retired exceeds the maximum age as defined in the act of October 27, 1955 (P.L. 744, No. 222), known as the 'Pennsylvania Human Relations Act,' then such reduction in numbers shall be made by retirement of such employes, starting with the oldest employe and following in order of age respectively, (ii) if the number of paid employes in the police force or fire force eligible to retirement is insufficient to effect the necessary reduction in numbers, or if there are no persons eligible for retirement, or if no retirement or pension fund exists, then the reduction shall be effected by furloughing the person or persons, including probationers, last appointed to the respective force. Such removal shall be accomplished by furloughing in numerical order commencing with the person last appointed until such reduction shall have been accomplished.

It would seem to me, therefore, that if in fact any furlough rights were violated, the violation was not one occurring under the contract, but was purely statutory and, hence, Act 111[4] arbitration is inapplicable.

Moreover, the provisions for grieving disputes between AFSCME and the Borough in the collective bar-

---

[4] The Act of June 24, 1968, P.L. 237, 43 P.S. §§217.1-217.10.

gaining agreement itself would seem to clearly indicate that such an event as a reduction-in-force (RIF) under Section 1190 of the Code was not within the parties' contemplation.[5]

This Court has previously considered on appeal issues concerning a RIF under Section 1190 of the Code where the litigation was instituted by filing a complaint in assumpsit, *Kraftician v. Borough of Carnegie*, 35 Pa. Commonwealth Ct. 470, 386 A.2d 1064 (1978) (when a RIF is deemed necessary under Section 1190 of Code it is proper to furlough the oldest police officer while hiring and retaining part-time non-civil service "special police"). We have likewise dealt with cases addressing the identical provisions in Section 313 of the Police Tenure Act,[6] where litigation was commenced by filing a suit in equity and mandamus, *Gruver v. Howell*, 28 Pa. Common-

---

[5] Article XV of the collective bargaining agreement, denominated GRIEVANCES, deals in substance only with the following subjects:

A. Should a dispute arise between the Borough and a Police Officer, there shall be no suspension of work on account of such dispute, but a grievance shall be filed and settled in accordance with the grievance procedures hereinafter set forth except that flagrant insubordination, intoxication on duty, or any action which must be taken immediately [sic]. No orders shall be disobeyed prior to completion of the within grievance procedure.

. . . .

E. . . . The scope of the matter cognizable through the above grievance procedure shall include all matters pertaining to the terms and conditions of employment *found in this contract*.

F. No officer shall be disciplined, demoted, suspended or discharged without just cause. (Emphasis added.)

Furthermore, the procedure for resolving a grievance outlined in the agreement, which culminates in binding arbitration, seems also unlikely to resolve a dispute over whether the Borough had "economic or other reasons" to reduce the size of the police force.

[6] The Act of June 15, 1951, P.L. 586, *as amended*, 53 P.S. §813.

wealth Ct. 296, 368 A.2d 920 (1977) (a reduction in the police force of a second class township for reasons of economy, even though not experiencing a financial crisis, was proper), and where an action for declaratory judgment and an appeal were filed under the Local Agency Law, *Minnick v. Borough of Hyndman,* 116 Pa. Commonwealth Ct. 361, 541 A.2d 1179 (1988) (furlough of chief of police, the only police officer in the borough, because of the lack of funds to purchase a police car).

While it is true that in the three cases cited, the procedural posture of the case itself was not an issue, we can fairly assume that the police officers in at least two of those matters were members of a collective bargaining unit employed under a collective bargaining agreement, since Act 111 was adopted in 1968, years before the cases were decided.

Last, although I cannot disagree with the majority's view that the police officers' complaint *alleges* a breach of the collective bargaining agreement, such an allegation is a conclusion of law. When the police officers in their complaint as plaintiffs, point to no specific provision of the agreement which has been breached, when we find none upon close examination, and the answer of the Borough asserts that the furloughs were for budgetary reasons only,[7] (an allegation admitted for the purposes of a demurrer), the legal conclusion is inescapable that the furloughs at issue here were under the statutory provisions of Section 1190 of the Code and not under the terms of the collective bargaining agreement. Hence, the grievance and arbitration procedures contained in the agreement as well as the provisions of Act 111 are totally inapplicable.

---

[7] Paragraph 84 in Answer of Borough.